**U.S. Bankruptcy Court**

**Eastern District of Pennsylvania**

Notice of Electronic Claims Filing

The following transaction was received from CARLON, DENISE on 1/30/2025 at 3:58 PM EST

File another claim

| | |
|---|---|
| **Case Name:** | Kimyutta M. Carroll |
| **Case Number:** | 24-14222-amc |
| **Creditor Name:** | M&T Bank<br>P.O. Box 840<br>Buffalo, NY 14240-0840 |
| **Claim Number:** | 17 Claims Register |
| **Amount Claimed:** | $161,331.99 |
| **Amount Secured:** | $161331.99 |
| **Amount Priority:** | |

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**POC- Carroll.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=1/30/2025] [FileNumber=32499029-0] [3562d5c4610630a7c64403cb37482a5a47781da4c1ac0ca1845217585499d1f330 2d0f9735ecbc90df62c7fe1337bd214477f66f2d1144d9d387cbe96b8a93f7]]
**Document description:**Exhibit 410a Payment History
**Original filename:**C:\fakepath\410A Carroll.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=1/30/2025] [FileNumber=32499029-1] [8e3efd73de89c2e8f8cd7bf79cb33ca7556d512c62a45a229593d4f1834d681b2b 71fc4f51c493a01bc628d483546a91fce56d0b8449032199bcc4c7e9c6853f]]
**Document description:**Exhibit Escrow Analysis
**Original filename:**C:\fakepath\Escrow Analysis- Redacted- Carroll.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=1/30/2025] [FileNumber=32499029-2] [3efa1ff62dcb7742e1774a66d0aafeb0633009fd5359c23361c50644ae291d4346 2f8b85a5b82e831c0c11ffeebd49787647466a2c04fec13ece05514834ac41]]
**Document description:**Exhibit Loan Documents
**Original filename:**C:\fakepath\Loan Documents- Carroll- Redacted.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1008166204 [Date=1/30/2025] [FileNumber=32499029-3] [aeae702c01aab08356bb9a63c2799740a6531e5e24a8028056b57bc26afed35936 d5fdc54bd9c28483e06977d4e8739eeae7d6a5833b57c3e94e0d07ffed7b2b]]

**24-14222-amc Notice will be electronically mailed to:**

DENISE ELIZABETH CARLON on behalf of Creditor M&T BANK
bkgroup@kmllawgroup.com

MICHAEL A. CIBIK on behalf of Debtor Kimyutta M. Carroll
help@cibiklaw.com,
noreply01@cibiklaw.com;noreply02@cibiklaw.com;noreply03@cibiklaw.com;noreply04@cibiklaw.com;noreply05@cibiklaw.com;cibiklawpc@jubileebk.net;cibiklaw@recap.email;ecf@casedriver.com

United States Trustee
USTPRegion03.PH.ECF@usdoj.gov

KENNETH E. WEST
ecfemails@ph13trustee.com, philaecf@gmail.com

**24-14222-amc Notice will not be electronically mailed to:**

**Fill in this information to identify the case:**

Debtor 1 Kimyutta M. Carroll

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the EASTERN District of Pennsylvania

Case number 24-14222 AMC

Official Form 410

# Proof of Claim

**12/24**

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

1. **Who is the current creditor?**

   **M&T Bank**
   Name of the current creditor (the person or entity to be paid for this claim)

   Other names the creditor used with the debtor ____________

2. **Has this claim been acquired from someone else?**

   ☒ No
   ☐ Yes. From whom? ____________

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|
| **M&T Bank**<br>Name | **M&T Bank**<br>Name |
| **P.O. Box 840**<br>Number Street | **ATTN: Payment Processing, P.O. Box 1288**<br>Number Street |
| **Buffalo, NY 14240-0840**<br>City State Zip Code | **Buffalo, NY 14240-1288**<br>City State Zip Code |
| Contact phone | Contact phone |
| Contact Email | Contact Email |

   Uniform claim identifier (if you use one):

   ________________________________

4. **Does this claim amend one already filed?**

   ☒ No
   ☐ Yes. Claim number on court claims registry (if known)_______ Filed on ____________ MM / DD / YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**

   ☒ No
   ☐ Yes. Who made the earlier filing? ____________

**Part 2: Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**

☐ No
☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor **3182**

7. **How much is this claim?** $161,331.99

**Does this amount include interest or other charges?**

☐ No
☒ Yes Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001 (c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

**Money Loaned**

9. **Is all or part of the claim secured?**

☐ No
☒ Yes. The claim is secured by a lien on property.

**Nature of property: 6716 Cornelius Street Philadelphia, PA 19138**

☒ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: ____________________

**Basis for perfection: Deed of Trust, Mortgage, Note**

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property**: $________________

**Amount of the claim that is secured: $161,331.99**

**Amount of the claim that is unsecured:** $________________ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition: $17,473.00**

**Annual Interest Rate** (when case was filed) 2.62500%

☒ Fixed
☐ Variable

10. **Is this claim based on a lease?**

☒ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $____________________

11. **Is this claim subject to a right of setoff?**

☒ No
☐ Yes. Identify the property: ____________________

12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☒ No

☐ Yes. *Check all that apply:*

| | **Amount entitled to priority** |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B) | |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)( ) that applies. | $ |

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date **01/30/2025**
MM / DD / YYYY

/s/ **Denise Carlon, Attorney ID# 317226**
Signature

**Print the name of the person who is completing and signing this claim:**

Name: **Denise Carlon**
First name Middle name Last name

Title: **Bankruptcy Attorney**

Company: **KML Law Group, P.C.**
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: **701 Market Street, Suite 5000**
Number Street

**Philadelphia** **PA** **19106**
City State ZIP Code

Contact phone: **(215) 627-1322** Email: **bkgroup@kmllawgroup.com**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: Kimyutta M. Carroll**<br><br>**Debtor(s)**<br><br>**M&T Bank**<br>**Movant**<br>**vs.**<br><br>**Kimyutta M. Carroll**<br><br>**Debtor(s)**<br><br>**Kenneth E. West**<br>**Trustee** | **BK NO. 24-14222 AMC**<br><br>**Chapter 13** |

**CERTIFICATE OF SERVICE**

I, Denise Carlon, certify that on 1/30/2025, I did cause a true and correct copy of the documents described below to be served on the parties listed on the mailing list exhibit, a copy of which is attached and incorporated as if fully set forth herein, by the means indicated and to all parties registered with the Clerk to receive electronic notice via the CM/ECF system:

- Proof of Claim
- 410a Payment History
- Escrow Analysis
- Loan Documents
- Certificate of Service

I certify under penalty of perjury that the above document(s) was sent using the mode of service indicated.

Dated: 1/30/2025

**/s/ Denise Carlon**
**Denise Carlon,** Esquire
Attorney I.D. 317226
KML Law Group, P.C.
BNY Mellon Independence Center
701 Market Street, Suite 5000
Philadelphia, PA 19106
201-549-2363
bkgroup@kmllawgroup.com

Mailing List Exhibit: (Check all that apply. If via e-mail, include e-mail address. Continue to the next page if necessary.)

| Name and Address of Party Served | Relationship of Party | Via |
|---|---|---|
| Kimyutta M. Carroll<br>6716 Cornelius Street<br>Philadelphia, PA 19138 | Debtor | ☐ Hand-delivered<br>☒ First Class Mail<br>☐ Certified mail<br>☐ E-mail<br>☐ CM/ECF<br>☐ Other<br>____________________<br>(as authorized by the court *) |
| Michael A. Cibik2 Esq.<br>1500 Walnut Street, Suite 900<br>Philadelphia, PA 19102 | Attorney for Debtor | ☐ Hand-delivered<br>☐ First Class Mail<br>☐ Certified mail<br>☐ E-mail<br>☒ CM/ECF<br>☐ Other<br>____________________<br>(as authorized by the court *) |
| Kenneth E. West<br>Office of the Chapter 13 Standing Trustee<br>190 N. Independence Mall West, Suite 701<br>Philadelphia, PA 19106 | Trustee | ☐ Hand-delivered<br>☐ First Class Mail<br>☐ Certified mail<br>☐ E-mail<br>☒ CM/ECF<br>☐ Other<br>____________________<br>(as authorized by the court *) |

**Part 1: Mortgage and Case Information**

| | |
|---|---|
| Case Number: | 24-14222-amc |
| Debtor 1: | Kimyutta M. Carroll |
| Debtor 2: | NA |
| Last 4 digits used to Identify | 3182 |
| Creditor: | M&T Bank |
| Servicer: | M&T Bank |
| Fixed accrual, Daily simple interest or other: | Fixed Accrual |

**Part 2: Total Debt Calculation**

| | |
|---|---|
| Principal Balance: | 150110.40 |
| Interest Due: | 2955.33 |
| MIP Amount: | 103.42 |
| Fees, Costs Due: | 8506.17 |
| Escrow deficiency for funds advanced: | 0.00 |
| Less total funds on hand: | -343.33 |
| Total Debt: | 161331.99 |

**Part 3: Arrearage as of Date of Petition**

| | |
|---|---|
| Principal due: | 2577.85 |
| Interest due: | 2607.27 |
| Prepetition fees due: | 8506.17 |
| Escrow deficiency for funds advanced: | 0.00 |
| Projected escrow shortage: | 3781.71 |
| Less funds on hand: | 0.00 |
| Total prepetition arrearage | 17473.00 |

**Part 4: Monthly Mortgage Payment**

| | |
|---|---|
| Principal & Interest | 648.14 |
| Monthly Escrow | 375.00 |
| Private Mortgage Insurance | 103.42 |
| Total Monthly Payment | 1126.56 |
| 1st Post Petition Payment Due | 12/1/2024 |

**Part 5: Loan Payment History from First Date of Default**

| | | Account Activity | | | | | | How funds were applied/Amount Incurred | | | | Balance after amount received or incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual Payment amount | C. Funds received | D. Amount Incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal Balance | N. Accrued interest balance | O. Escrow Balance | P. Fees / Charges Balance | Q. Unapplied Funds Balance |
| | | | | Beginning Balance | | 0.00 | | | | | | 150,449.43 | | 817.76 | 0.00 | 0.00 |
| 3/1/24 | 1,112.47 | | | Contractual Payment Due | 3/1/2024 | 1,112.47 | | | | | | 150,449.43 | | 817.76 | 0.00 | 0.00 |
| 3/4/24 | | | | Mortgage Insurance Disbursement | 3/1/2024 | 1,112.47 | | | -106.08 | | | 150,449.43 | | 711.68 | 0.00 | 0.00 |
| 3/6/24 | | 1,112.47 | | Payment Applied | 3/1/2024 | 0.00 | 319.03 | 329.11 | 464.33 | | | 150,130.40 | | 1,176.01 | 0.00 | 0.00 |
| 3/29/24 | | 1,112.47 | | Payment Applied | 4/1/2024 | -1,112.47 | 319.73 | 328.41 | 464.33 | | | 149,810.67 | | 1,640.34 | 0.00 | 0.00 |
| 4/1/24 | 1,112.47 | | | Contractual Payment Due | 5/1/2024 | 0.00 | | | | | | 149,810.67 | | 1,640.34 | 0.00 | 0.00 |
| 4/4/24 | | | | Insufficient Funds | 4/1/2024 | 1,112.47 | -319.73 | -328.41 | -464.33 | | | 150,130.40 | | 1,176.01 | 0.00 | 0.00 |
| 4/4/24 | | | | Mortgage Insurance Disbursement | 4/1/2024 | 1,112.47 | | | -106.08 | | | 150,130.40 | | 1,069.93 | 0.00 | 0.00 |
| 4/15/24 | | | | Escrow Refund | 4/1/2024 | 1,112.47 | | | -101.22 | | | 150,130.40 | | 968.71 | 0.00 | 0.00 |
| 4/16/24 | | | 25.93 | Late Charge | 4/1/2024 | 1,112.47 | | | | 25.93 | | 150,130.40 | | 968.71 | 25.93 | 0.00 |
| 5/1/24 | 1,112.47 | | | Contractual Payment Due | 4/1/2024 | 2,224.94 | | | | | | 150,130.40 | | 968.71 | 25.93 | 0.00 |
| 5/3/24 | | | | Mortgage Insurance Disbursement | 4/1/2024 | 2,224.94 | | | -106.08 | | | 150,130.40 | | 862.63 | 25.93 | 0.00 |
| 5/16/24 | | | 25.93 | Late Charge | 4/1/2024 | 2,224.94 | | | | 25.93 | | 150,130.40 | | 862.63 | 51.86 | 0.00 |
| 5/28/24 | | | 30.00 | Property Inspection | 4/1/2024 | 2,224.94 | | | | 30.00 | | 150,130.40 | | 862.63 | 81.86 | 0.00 |
| 6/1/24 | 1,112.47 | | | Contractual Payment Due | 4/1/2024 | 3,337.41 | | | | | | 150,130.40 | | 862.63 | 81.86 | 0.00 |
| 6/4/24 | | | | Mortgage Insurance Disbursement | 4/1/2024 | 3,337.41 | | | -103.42 | | | 150,130.40 | | 759.21 | 81.86 | 0.00 |
| 6/17/24 | | | 25.93 | Late Charge | 4/1/2024 | 3,337.41 | | | | 25.93 | | 150,130.40 | | 759.21 | 107.79 | 0.00 |
| 6/25/24 | | | 30.00 | Property Inspection | 4/1/2024 | 3,337.41 | | | | 30.00 | | 150,130.40 | | 759.21 | 137.79 | 0.00 |
| 7/1/24 | 1,112.47 | | | Contractual Payment Due | 4/1/2024 | 4,449.88 | | | | | | 150,130.40 | | 759.21 | 137.79 | 0.00 |
| 7/3/24 | | | | Mortgage Insurance Disbursement | 4/1/2024 | 4,449.88 | | | -103.42 | | | 150,130.40 | | 655.79 | 137.79 | 0.00 |
| 7/16/24 | | | 25.93 | Late Charge | 4/1/2024 | 4,449.88 | | | | 25.93 | | 150,130.40 | | 655.79 | 163.72 | 0.00 |
| 7/25/24 | | | 30.00 | Property Inspection | 4/1/2024 | 4,449.88 | | | | 30.00 | | 150,130.40 | | 655.79 | 193.72 | 0.00 |
| 8/1/24 | 1,112.47 | | | Contractual Payment Due | 4/1/2024 | 5,562.35 | | | | | | 150,130.40 | | 655.79 | 193.72 | 0.00 |
| 8/2/24 | | | | Mortgage Insurance Disbursement | 4/1/2024 | 5,562.35 | | | -103.42 | | | 150,130.40 | | 552.37 | 193.72 | 0.00 |
| 8/15/24 | | | 400.00 | FC Cost Title | 4/1/2024 | 5,562.35 | | | | 400.00 | | 150,130.40 | | 552.37 | 593.72 | 0.00 |
| 8/20/24 | | 20.00 | | Funds Received | 4/1/2024 | 5,562.35 | | | | | 20.00 | 150,130.40 | | 552.37 | 593.72 | 20.00 |
| 8/21/24 | | | | Principal Payment | 4/1/2024 | 5,562.35 | 20.00 | | | | -20.00 | 150,110.40 | | 552.37 | 593.72 | 0.00 |
| 9/1/24 | 1,112.47 | | | Contractual Payment Due | 4/1/2024 | 6,674.82 | | | | | | 150,110.40 | | 552.37 | 593.72 | 0.00 |
| 9/4/24 | | | | Mortgage Insurance Disbursement | 4/1/2024 | 6,674.82 | | | -103.42 | | | 150,110.40 | | 448.95 | 593.72 | 0.00 |
| 9/13/24 | | | 30.00 | Property Inspection | 4/1/2024 | 6,674.82 | | | | 30.00 | | 150,110.40 | | 448.95 | 623.72 | 0.00 |
| 9/16/24 | | | 1,725.00 | FC Atty Fees | 4/1/2024 | 6,674.82 | | | | 1,725.00 | | 150,110.40 | | 448.95 | 2,348.72 | 0.00 |
| 9/16/24 | | | 374.23 | FC Cost Service | 4/1/2024 | 6,674.82 | | | | 374.23 | | 150,110.40 | | 448.95 | 2,722.95 | 0.00 |
| 10/1/24 | 1,112.47 | | | Contractual Payment Due | 4/1/2024 | 7,787.29 | | | | | | 150,110.40 | | 448.95 | 2,722.95 | 0.00 |

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/4/24 | | | | Mortgage Insurance Disbursement | 4/1/2024 | 7,787.29 | | | -103.42 | | | 150,110.40 | | 345.53 | 2,722.95 | 0.00 |
| 10/9/24 | | 101.22 | | Escrow Payment | 4/1/2024 | 7,787.29 | | | 101.22 | | | 150,110.40 | | 446.75 | 2,722.95 | 0.00 |
| 10/22/24 | | | 30.00 | Property Inspection | 4/1/2024 | 7,787.29 | | | | 30.00 | | 150,110.40 | | 446.75 | 2,752.95 | 0.00 |
| 11/1/24 | 1,112.47 | | | Contractual Payment Due | 4/1/2024 | 8,899.76 | | | | | | 150,110.40 | | 446.75 | 2,752.95 | 0.00 |
| 11/4/24 | | | | Mortgage Insurance Disbursement | 4/1/2024 | 8,899.76 | | | -103.42 | | | 150,110.40 | | 343.33 | 2,752.95 | 0.00 |
| 11/13/24 | | | 375.00 | FC Atty Fees | 4/1/2024 | 8,899.76 | | | | 375.00 | | 150,110.40 | | 343.33 | 3,127.95 | 0.00 |
| 11/13/24 | | | 72.68 | FC Cost Filing | 4/1/2024 | 8,899.76 | | | | 72.68 | | 150,110.40 | | 343.33 | 3,200.63 | 0.00 |
| 11/13/24 | | | 2.31 | FC Cost Service | 4/1/2024 | 8,899.76 | | | | 2.31 | | 150,110.40 | | 343.33 | 3,202.94 | 0.00 |
| 11/13/24 | | | 3.71 | FC Cost Service | 4/1/2024 | 8,899.76 | | | | 3.71 | | 150,110.40 | | 343.33 | 3,206.65 | 0.00 |
| 11/13/24 | | | 9.78 | FC Cost Service | 4/1/2024 | 8,899.76 | | | | 9.78 | | 150,110.40 | | 343.33 | 3,216.43 | 0.00 |
| 11/13/24 | | | 90.00 | FC Cost Service | 4/1/2024 | 8,899.76 | | | | 90.00 | | 150,110.40 | | 343.33 | 3,306.43 | 0.00 |
| 11/13/24 | | | 135.00 | FC Cost Service | 4/1/2024 | 8,899.76 | | | | 135.00 | | 150,110.40 | | 343.33 | 3,441.43 | 0.00 |
| 11/13/24 | | | 135.00 | FC Cost Service | 4/1/2024 | 8,899.76 | | | | 135.00 | | 150,110.40 | | 343.33 | 3,576.43 | 0.00 |
| 11/13/24 | | | 4,209.74 | FC Cost Service | 4/1/2024 | 8,899.76 | | | | 4,209.74 | | 150,110.40 | | 343.33 | 7,786.17 | 0.00 |
| 11/18/24 | | | 690.00 | FC Atty Fees | 4/1/2024 | 8,899.76 | | | | 690.00 | | 150,110.40 | | 343.33 | 8,476.17 | 0.00 |
| 11/20/24 | | | 30.00 | Property Inspection | 4/1/2024 | 8,899.76 | | | | 30.00 | | 150,110.40 | | 343.33 | 8,506.17 | 0.00 |

Debtor(s) executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

 REPRESENTATION OF PRINTED DOCUMENT

# Annual Escrow Account Disclosure Statement

P.O. Box 619063, Dallas, TX 75261-9063
DO NOT SEND MAIL TO THIS ADDRESS.

KIMYUTTA M CARROLL
6716 CORNELIUS ST
PHILADELPHIA PA 19138-1617

**Please review – important information regarding your escrow account.**

**Loan Number:**

**Property Address:**
6716 Cornelius St
Philadelphia, PA 19138

**Statement Date:** 12/03/2024

**New Payment Effective Date:** 12/01/2024

Dear Kimyutta M Carroll,

Your relationship is important to us and we appreciate the opportunity to service your home financing needs. This statement provides details on your escrow account history, as well as our projections for your property tax and homeowner's insurance obligations for the next 12 months.

Based on our review, there wasn't a shortage or surplus of funds in your escrow account. However, we need to adjust your account for future projected disbursements. **Your mortgage payment is changing — please see details below.**

## YOUR NEW PAYMENT

| Payment Information | Current Monthly Payment | Your New Monthly Payment beginning on 12/01/2024 |
|---|---|---|
| Principal & Interest: | $648.14 | $648.14 |
| Escrow Payment: | $464.33 | $478.42 |
| **Total Payment:** | **$1,112.47** | **$1,126.56** |

To help you better understand your statement, as well as escrow accounts in general, please review the enclosed "Helpful Information" page or visit mtb.com/escrow faqs. If you have any other questions, please call us at 1 800 411 7627, Monday Friday, 8:30am 9:00pm ET, or write to us at M&T Bank, P.O. Box 1288, Buffalo, NY 14240.

Thank you for being our customer. We take great pride in being your mortgage partner.

**Quick and easy payment options:**

ONLINE
at mtb.com

CALL
1-800-411-7627

STOP BY
any M&T branch

INTERNET REPRINT

THIS SECTION HAS BEEN INTENTIONALLY LEFT BLANK

M&T Bank

**Annual Escrow Account Disclosure Statement**

## YOUR ACCOUNT HISTORY

Below are the previous escrow projections (including anticipated escrow activity that may occur before your New Payment Effective Date listed on page 1) and the actual escrow activity to date. Comparing the two can determine where a difference may have occurred.

### Activity Summary

| Month & Year | Projected Payment to Escrow | Actual Payment to Escrow | Description | Projected Disbursement | Actual Disbursement | Projected Balance | Actual Balance |
|---|---|---|---|---|---|---|---|
| | | | **Beginning Balance** | | | **$1,791.29** | **$862.63** |
| Jun 2024 | $464.33 | * | Risk Bsd FHA | $106.08 | * | $2,149.54 | $862.63 |
| Jun 2024 | | | Risk Bsd FHA | | $103.42 * | $2,149.54 | $759.21 |
| Jul 2024 | $464.33 | * | Risk Bsd FHA | $106.08 | * | $2,507.79 | $759.21 |
| Jul 2024 | | | Risk Bsd FHA | | $103.42 * | $2,507.79 | $655.79 |
| Aug 2024 | $464.33 | * | Risk Bsd FHA | $106.08 | * | $2,866.04 | $655.79 |
| Aug 2024 | | | Risk Bsd FHA | | $103.42 * | $2,866.04 | $552.37 |
| Sep 2024 | $464.33 | * | Risk Bsd FHA | $106.08 | * | $3,224.29 | $552.37 |
| Sep 2024 | | | Risk Bsd FHA | | $103.42 * | $3,224.29 | $448.95 |
| Oct 2024 | $464.33 | $101.22 * | Risk Bsd FHA | $106.08 | * | $3,582.54 | $550.17 |
| Oct 2024 | | | Risk Bsd FHA | | $103.42 * | $3,582.54 | $446.75 |
| Nov 2024 | $464.33 | * | Risk Bsd FHA | $106.08 | * | $3,940.79 | $446.75 |
| Nov 2024 | | | Risk Bsd FHA | | $103.42 * | $3,940.79 | $343.33 |

**The total amount of escrow payments received during this period was $3,815.86 and the total escrow disbursements were $620.52.**

*Indicates a difference from a previous estimate either in the date or the amount of the deposit/disbursement.

Borrower Paid Mortgage Insurance Premium: Your mortgage loan requires a borrower paid mortgage insurance premium (“MIP”). MIP is insurance from the Federal Housing Administration (“FHA”) that protects lenders against loss in the event a borrower defaults on a mortgage.

**Effective for all loans closed on or after January 1, 2001, FHA annual MIP will be automatically cancelled under the following conditions:**
**Loans with FHA case numbers assigned before June 3, 2013:**

- Mortgage loan terms greater than 15 years: the annual MIP will be cancelled when the loan to value ratio reaches 78%, provided the mortgagor has paid the annual mortgage insurance premium for at least five years.
- Mortgage loan terms less than or equal to 15 years with a loan to value ratio greater than 78%: the annual MIP will be cancelled when the loan to value ratio reaches 78%.

**FHA will determine when you have reached the 78% loan to value ratio based on the lower of the sales price or appraised value at origination.** New appraised values will not be considered. Cancellation of the annual mortgage insurance premium will normally be based on the scheduled amortization of the loan. However, in cases where additional payments have been applied to the loan balance as a prepayment, cancellation can be based on the actual amortization of the loan. If you have prepaid and believe you have met the requirements for cancelling the FHA insurance, please send a written request to us at P.O. Box 1288, Buffalo, NY 14240.

**Loans with FHA case numbers assigned on or after June 3, 2013:**

- Mortgage loan terms greater than 15 years with loan to value ratio greater than 90%: duration of the annual MIP is the loan term.
- Mortgage loan terms greater than 15 years with loan to value ratio less than or equal to 90%: duration of the annual MIP is 11 years.
- Mortgage loan terms less than or equal to 15 years with loan to value ratio greater than 90%: duration of the annual MIP is the loan term.
- Mortgage loan terms less than or equal to 15 years with loan to value ratio less than or equal to 90%: duration of the annual MIP is 11 years.



**Annual Escrow Account Disclosure Statement**

KIMYUTTA M CARROLL
Loan Number:
Statement Date: 12/03/24

## PROJECTED ESCROW PAYMENTS OVER THE NEXT 12 MONTHS

### Anticipated Annual Disbursements

| | |
|---|---|
| Mortgage Ins: | $1,241.04 |
| Hazard Ins: | $1,944.00 |
| City Tax: | $2,556.03 |
| Total: | $5,741.07 |

As allowed by federal law (RESPA), our projections include an escrow reserve (or cushion) equal to two monthly escrow payments (excluding MIP/PMI), unless state law specifies a lower amount.

### Projected Escrow Balance Summary

M&T Bank expects to pay $5,741.07 over the next 12 months.

Here's how to calculate your new monthly escrow payment:

| | |
|---|---|
| Total taxes and insurance: | $5,741.07 |
| Divided by 12 monthly payments: | $478.42 |
| **New Monthly Escrow Payment:** | **$478.42** |

### Anticipated Activity Summary

Projections for the coming year: The following summary shows anticipated activity in your escrow account for the next 12 months, which was used to calculate your payment above.

| Month & Year | Monthly Escrow Payment | Amount Scheduled to be Paid | Description | Projection Based on Current Balance | Projection Based on Required Balance |
|---|---|---|---|---|---|
| | | | **Beginning Balance** | **$4,057.97** | **$4,125.04** |
| Dec 2024 | $478.42 | $103.42 | Risk Bsd FHA | $4,432.97 | $4,500.04 |
| Jan 2025 | $478.42 | $103.42 | Risk Bsd FHA | $4,807.97 | $4,875.04 |
| Jan 2025 | | $1,944.00 | Hazard Ins | $2,863.97 | $2,931.04 |
| Feb 2025 | $478.42 | $103.42 | Risk Bsd FHA | $3,238.97 | $3,306.04 |
| **Feb 2025** | | **$2,556.03** | **City/Village** | **$682.94** | **$750.01** |
| Mar 2025 | $478.42 | $103.42 | Risk Bsd FHA | $1,057.94 | $1,125.01 |
| Apr 2025 | $478.42 | $103.42 | Risk Bsd FHA | $1,432.94 | $1,500.01 |
| May 2025 | $478.42 | $103.42 | Risk Bsd FHA | $1,807.94 | $1,875.01 |
| Jun 2025 | $478.42 | $103.42 | Risk Bsd FHA | $2,182.94 | $2,250.01 |
| Jul 2025 | $478.42 | $103.42 | Risk Bsd FHA | $2,557.94 | $2,625.01 |
| Aug 2025 | $478.42 | $103.42 | Risk Bsd FHA | $2,932.94 | $3,000.01 |
| Sep 2025 | $478.42 | $103.42 | Risk Bsd FHA | $3,307.94 | $3,375.01 |
| Oct 2025 | $478.42 | $103.42 | Risk Bsd FHA | $3,682.94 | $3,750.01 |
| Nov 2025 | $478.42 | $103.42 | Risk Bsd FHA | $4,057.94 | $4,125.01 |

**Escrow Requirements, New Mortgage Payment and Anticipated Annual Disbursements:**

| | |
|---|---|
| Projected Beginning Balance | $4,057.97 |
| - Required Minimum Balance | $4,125.04 |
| **Surplus/Shortage** | **$0.00**** |

Your lowest monthly escrow balance for the next 12 months should reach $750.01, which equals a reserve of two months' escrow payments. The expected amount in your escrow account after your Nov 2024 payment is $4,057.97. Your starting balance according to this review should be $4,125.04. This means that your have neither a shortage or surplus.

**This has been adjusted for the bankruptcy proof of claim.

M&T Bank

**Annual Escrow Account Disclosure Statement**

M&T Bank is attempting to collect a debt and any information obtained will be used for that purpose. To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this statement is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, M&T Bank retains rights under its security instrument, including the right to foreclose its lien.

Equal Housing Lender. ©2022 M&T Bank. Member FDIC. NMLS mtb.com

# Helpful information about your mortgage escrow disclosure statement.

To help you better understand your statement, as well as escrow accounts in general, answers to some of the most frequently asked questions are listed below.

### Q Why am I getting this statement?

**A** Mortgage lenders are required by regulations to perform an annual review of your account and provide a hard copy statement for your records.

### Q How does an escrow account work?

**A** A mortgage escrow account allows you to pay ongoing property tax and homeowner's insurance costs within your monthly mortgage payments. These additional funds accumulate in your escrow account, managed by M&T, and we pay property taxes, homeowner's insurance and any mortgage insurance on your behalf when they are due.

### Q How is my escrow payment determined?

**A** To determine the appropriate funds are collected for the escrow portion of your payment, we use the following calculation:

*12 months of anticipated escrow payments, accounting for any existing escrow balance*
**+** *escrow reserve*
**÷** *12*
**=** *monthly escrow payment*

The escrow reserve (or escrow cushion) is the amount of money collected to cover any unanticipated increases in your real estate tax or insurance premium payment. It acts as a buffer and helps to prevent your escrow account from being overdrawn. An escrow reserve exists on your account unless your mortgage documents or state law applies and is generally a two-month escrow payment.

### Q What causes escrow payments to change from year to year?

**A** Your escrow payment may increase for several reasons. The most common reasons are:

- Increases in your property taxes, insurance premiums, or your property's tax assessment
- Changes in your insurance carrier or your tax due date
- Fewer deposits to escrow than expected

Even though taxes or insurance may go down from the previous year, it doesn't mean escrow payments will also decrease. Analysis calculations for tax and/or insurance are based on last amount(s) paid, or where applicable, from the prior servicer or from closing documents. If you have received more recently updated information from your tax assessor, please forward it to eta@mtb.com.

**TIP:** Municipalities offer a few common tax exemptions for disability, homestead, senior and veteran status. Check with your local tax office to see if you are eligible for these, or any other exemptions.

### Q If there is an escrow shortage, what do I need to do?

**A** You are not required to pay the escrow shortage in full.

If you do not want to submit the full shortage amount, the escrow shortage will be spread equally over 12 months of payments and your new payment will be higher for the coming year.

If you choose to submit the full shortage amount (partial payments are not permitted), you have two payment options:

- **Online:** Log in to your M&T Online or Mobile Banking account, select your mortgage account and click the "View My Mortgage Info" button. At the top left of the next screen, select "Make A Payment." Your mortgage loan must be current to use this option.
- **By Mail:** Send a check, made payable to M&T Bank with "escrow shortage payment" and the loan number noted on the memo line, to: M&T Bank, Escrow Department, P.O. Box 64787, Baltimore, MD 21264-4787. If you are paying your escrow shortage, the funds will be applied immediately, however your mortgage statement may not reflect changes until the analysis effective date.

**PLEASE NOTE:** Paying the full shortage amount will adjust your account resulting in the smallest possible increase in your monthly mortgage payment amount. It's important to keep in mind that any increase in your real estate tax amounts and/or insurance premium(s) may cause your payment amount to change even if you pay your shortage amount.

### Q Why do I have an escrow overage (surplus of funds) in my account?

**A** An overage occurs if the current funds and future payments to your escrow account are estimated to exceed the anticipated tax and insurance payments for the next 12 months (escrow analysis period). An overage may occur if taxes or insurance premiums were lower than estimated. When the escrow analysis is completed, the overage amount may be sent to you as a refund check. If the surplus is less than $50, it will be credited to your payment.

## Have additional questions? We're here to help.

Go to **mtb.com/escrow-faqs** for answers to other frequently asked questions.
Or call us at **1-800-411-7627** Monday – Friday, 8:30am – 9pm ET.

We appreciate your business. Thank you for giving us the opportunity to serve your financial needs.

Equal Housing Lender. ©2022 M&T Bank. Member FDIC. NMLS [redacted] mtb.com

# NOTE

| April 23, 2021 | Woodland Hills, | California |
|---|---|---|
| [Date] | [City] | [State] |

6716 Cornelius St, Philadelphia, PA 19138
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$161,368.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **AmeriHome Mortgage Company, LLC.**

I will make all payments under this Note in the form of cash, check or money order

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **2.625 %**.

The interest rate required by this Section 2 is the rate I will pay both before and after any Survival Event as defined in this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **June 1, 2021.**

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and any other items in the order described in the Security Instrument before Principal. If, on **May 1, 2051,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will continue to pay those amounts both before and after any Survival Event as defined in this Note, until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.

I will make my monthly payments at **17885 Von Karman Avenue, Suite 100
Irvine, CA 92614**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. **$648.14.**

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

(Page 4 of 6)
Proof of Claim Page 16 of 44

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000 %** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees. I will pay the Note Holder back for those expenses paid by the Note Holder both before and after any Survival Event as defined in this Note.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. EFFECT OF SURVIVAL EVENTS**

For purposes of this Note, "Survival Event" is defined as follows:

(a) any default described in Section 6(B) of this Note;
(b) Noteholder requiring me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount under Section 6(C) of this Note;
(c) Noteholder requiring immediate payment in full of all sums secured by the Security Instrument;
(d) the Maturity Date as defined in this Note;
(e) the entry of any judgment against me under this Note; and
(f) the entry of any judgment under the Security Instrument.

PENNSYLVANIA FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT 3239 2/16
Modified for FHA 5/16
Ellie Mae, Inc.
Page 2 of 3
04/22/2021 04:35 PM PST

(Page 5 of 6)
Proof of Claim Page 17 of 44

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

KIMYUTTA M CARROLL (Seal)

[Sign Original Only]

PENNSYLVANIA FIXED RATE NOTE – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT 3239 2/16
Modified for FHA 5/16
Ellie Mae, Inc.
Page 3
04/22/2021 04:35 PM PST

**Allonge to Note**

| | |
|---|---|
| Loan Amount: | $161,368.00 |
| Note Date: | 04/23/2021 |
| Borrower Name(s): | Kimyutta M Carroll |
| Property Address: | 6716 Cornelius St, Philadelphia, PA 19138 |

Pay to the order of:

Without Recourse

AmeriHome Mortgage Company, LLC, a Delaware Limited Liability Company

Signature: ______________________

Name of Authorized Signer: Jennifer Guidicessi

Title of Authorized Signer: Senior Vice President, Capital Markets, Post Closing

eRecorded in Philadelphia PA Doc Id:
06/10/2021 08:36 AM Page 1 of 23 Rec Fee: $226.75
Receipt#:
Records Department Doc Code:

**When recorded, return to:**
**AmeriHome Mortgage Company, LLC**
**Attn: Post closing**
**1 Baxter Way**
**Suite 300**
**Thousand Oaks, CA 91362-3888**

**This document was prepared by:**
**AmeriHome Mortgage Company, LLC**
**17885 Von Karman Avenue**
**Suite 100**
**Irvine, CA 92614**
**844-272-5617**

**APN #:**

**Title Order No.:**
**Escrow No.:** **LOAN #:**

[Space Above This Line For Recording Data]

# MORTGAGE

FHA Case No.

**MIN:**
**MERS PHONE #: 1-888-679-6377**

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated **April 23, 2021,** together with all Riders to this document.

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3039 1/01 (rev. 2/16)**
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc. Page 1 of 22
04/22/2021 04:35 PM PST



Proof of Claim Page 20 of 44
2 of 23 06/10/2021 08:05 AM

**LOAN #:**

**(B) "Borrower"** is **KIMYUTTA M. CARROLL.**

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.
**(D) "Lender"** is **AmeriHome Mortgage Company, LLC.**

Lender is **a Limited Liability Company,** organized and existing under the laws of **Delaware.**
Lender's address is **1 Baxter Way, Suite 300, Thousand Oaks, CA 91362-3888.**

**(E) "Note"** means the promissory note signed by Borrower and dated **April 23, 2021.** The Note states that Borrower owes Lender **ONE HUNDRED SIXTY ONE THOUSAND THREE HUNDRED SIXTY EIGHT AND NO/100*** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. **$161,368.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **May 1, 2051.**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:
☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Planned Unit Development Rider
☐ Other(s) [specify]

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3039 1/01 (rev. 2/16)**
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc. Page 2 of 22

04/22/2021 04:35 PM PST

**LOAN #:**

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.
**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

**PENNSYLVANIA–**Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3039 1/01 (rev. 2/16)**
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc. Page 3 of 22
04/22/2021 04:35 PM PST

Case 24-14222-amc Doc 13-2 Filed 02/ 1/25 13:48:34 Desc
Proof of Claim

LOAN #:

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the **County** of **Philadelphia**

[Type of Recording Jurisdiction] [Name of Recording Jurisdiction]:

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**

**APN #:**

which currently has the address of **6716 Cornelius St, Philadelphia,**

[Street] [City]

Pennsylvania **19138** ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3039 1/01 (rev. 2/16)**
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc. Page 4 of 22
04/22/2021 04:35 PM PST



Case 24-14222-amc Doc 13-2 Filed 0[redacted]08/11/25 18:48:34 Desc
Proof of Clai[redacted]

LOAN #: [redacted]

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3039 1/01 (rev. 2/16)**
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc. Page 5 of 22 [redacted]
04/22/2021 04:35 PM PST

[redacted]

Proof of Claim Page 24 of 44
Page 6 of 23 06/10/2021 08:05 AM

LOAN #:

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3039 1/01 (rev. 2/16)**
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc. Page 6 of 22
04/22/2021 04:35 PM PST

LOAN #: [redacted]

or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation

[redacted]

Case 24-14222-amc Doc 13-2 Filed 02/1[redacted]2/11/25 13:48:34 Desc
Proof of Claim [redacted]

LOAN # [redacted]

secured by the lien in a manner acceptable to Lender, but only so long [redacted] performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may *obtain insurance coverage, at Lender's option and Borrower's expense.* Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3039 1/01 (rev. 2/16)**
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc. Page 8 of 22 [redacted]
04/22/2021 04:35 PM PST
[redacted]

Proof of Claim Page 27 of 44

LOAN #:

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 24 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3039 1/01 (rev. 2/16)**
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc. Page 9 of 22

04/22/2021 04:35 PM PST

Case 24-14222-amc Doc 13-2 Filed 02/11/25 [redacted] 06/10/2021 08:56 AM
Proof of Claim Page 28 of 44

LOAN #: [redacted]

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3039 1/01 (rev. 2/16)**
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc. Page 10 of 22
04/22/2021 04:35 PM PST

Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay

Case 24-14222-amc Doc 13-2 Filed 02/[redacted] 02/11/25 13:48:34 Desc
Proof of Claim Page 30 of 44

LOAN #:

Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3039 1/01 (rev. 2/16)**
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc. Page 12 of 22
04/22/2021 04:35 PM PST

Case 24-14222-amc Doc 13-2 Filed 0[redacted]/11/25 13:48:34 Desc
Proof of Claim [redacted]
of 23 06/10/2021 08:55 AM

**LOAN #:** [redacted]

Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3039 1/01 (rev. 2/16)**
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc. Page 13 of 22 [redacted]
04/22/2021 04:35 PM PST
[redacted]

Case 24-14222-amc Doc 13-2 Filed 02/ 02/11/25 13:48:34 Desc
Proof of Claim
e 44 of 23 06/10/2021 08:05 AM

LOAN #

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3039 1/01 (rev. 2/16)**
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc. Page 14 of 22
04/22/2021 04:35 PM PST

Case 24-14222-amc Doc 13-2 Filed 02/1 02/11/25 13:48:34 Desc
Proof of Claim 
15 of 23 06/10/2021 08:05 AM

LOAN #:

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3039 1/01 (rev. 2/16)**
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc. Page 15 of 22
04/22/2021 04:35 PM PST



reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.



LOAN #:

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**22. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but

Case 24-14222-amc Doc 13-2 Filed 02/1[redacted]d 02/11/25 10:48:34 Desc 06/10/2021 08:56 AM
Proof of Claim [redacted]4

**LOAN #:** [redacted]

his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**23. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Section 23.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3039 1/01 (rev. 2/16)**
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc. Page 18 of 22 [redacted]
04/22/2021 04:35 PM PST

[redacted]

Case 24-14222-amc Doc 13-2 Filed 0[redacted]02/11/25 10:48:34 Desc 06/10/2021 08:56 AM
Proof of Claim [redacted]

LOAN #:[redacted]

appointed receiver may do so at any time there is a breach. Any applic[redacted]ation of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**24. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 24, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Section 22, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Section 24 or applicable law.**

**25. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**26. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of

**PENNSYLVANIA–**Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** **Form 3039 1/01 (rev. 2/16)**
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc. Page 19 of 22 [redacted]
04/22/2021 04:35 PM PST

[redacted]

**LOAN #:** [redacted]

execution, extension of time, exemption from attachment, levy and sale, [redacted]stead exemption.

**27. Reinstatement Period.** Borrower's time to reinstate provided in Section 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**28. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**29. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

**(a)** pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;
**(b)** pay the amounts and take the actions required by Section 4 of this Security Instrument;
**(c)** maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;
**(d)** maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;
**(e)** if this Security Instrument is on a leasehold, comply with all the provisions of the lease;
**(f)** treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;
**(g)** permit the collection and application of miscellaneous proceeds as required by Section 10 of this Security Instrument;
**(h)** pay the fees required by Section 13 of this Security Instrument;
**(i)** continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;
**(j)** pay any collection expenses under Section 24 of this Security Instrument; and
**(k)** pay interest at the rate payable from time to time under the Note.

"Survival Event" means any of the following:

**(a)** any default described in the Note;
**(b)** Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;
**(c)** Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 17 and 24 of this Security Instrument;
**(d)** the Maturity Date as defined in the Note;
**(e)** the entry of any judgment against Borrower under the Note; and
**(f)** the entry of any judgment under this Security Instrument.

[redacted]

Proof of Claim Page 39 of 44

**LOAN #:**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Kimyutta M. Carroll 4/23/2021 (Seal)
**KIMYUTTA M CARROLL** **DATE**

**State of PENNSYLVANIA**
**County of PHILADELPHIA**

**This record was acknowledged before me on this, the** 23rd **day of** April, 2021**, by KIMYUTTA M CARROLL.**

**Signature of Notarial Officer**
**(STAMP)**

Commonwealth of Pennsylvania - Notary Seal
SENOL ONAL, Notary Public
Bucks County
My Commission Expires September 23, 2021
Commission Number 1123385

**Title of Officer** NOTARY PUBLIC

**My commission expires** September 23, 2021

**PENNSYLVANIA**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT** Form 3039 1/01 (rev. 2/16)
Modified by Ellie Mae, Inc. for FHA 9/2014 (HUD Handbook 4000.1)
Ellie Mae, Inc. Page 21 of 22
04/22/2021 04:35 PM PST

**LOAN #:** ████

Certificate of Residence
I, _Imelda Garcia_ , do hereby certify
that the correct address of the within-named Mortgagee is P.O. Box 2026, Flint, MI 48501-2026.

Witness my hand this ___23___ day of __April 2021__

_Imelda Garcia_
Agent of Mortgagee

04/22/2021 04:35 PM PST



# EXHIBIT "A"
## LEGAL DESCRIPTION

[redacted]

THE FOLLOWING DESCRIBED REAL PROPERTY SITUATED IN THE COUNTY OF PHILADELPHIA, STATE OF PENNSYLVANIA:

ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED.

SITUATE ON THE SOUTHWESTERLY SIDE OF CORNELIUS STREET AT THE DISTANCE OF ONE HUNDRED THIRTY-ONE FEET, FOUR INCHES NORTHWESTWARDLY FROM THE NORTHWESTERLY SIDE OF WALNUT LANE (SIXTY FEET WIDE) IN THE 10 TH WARD OF THE CITY OF PHILADELPHIA.

CONTAINING IN FRONT OR BREADTH ON THE SAID SIDE OF CORNELIUS STREET SIXTEEN FEET FOUR INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH SOUTHWESTWARDLY BETWEEN PARALLEL LINES AT RIGHT ANGLES TO THE SAW CORNELIUS STREET EIGHTY FEET TO A CERTAIN FIFTEEN FEET WIDE DRIVEWAY EXTENDING FROM WALNUT LANE TO HERMAN STREET, NOW KNOWN AS BEYERLY ROAD.

**PARCEL:** [redacted]

**BEING THE SAME PROPERTY CONVEYED TO KIMYUTTA M. CARROLL BY DEED FROM CHARMAINE NICOLE ALLEN RECORDED 01/24/2020 IN DEED INSTRUMENT NO. 53623664, IN THE OFFICE OF THE RECORDER OF DEEDS OF PHILADELPHIA COUNTY, PENNSYLVANIA.**

**eRecorded in Philadelphia PA Doc**
**08/29/2023 02:01 PM Page 1 of 3 Rec Fee: $221.50**
**Receipt#:**
**Records Department Doc Code:**

**Record and Return To:**
M&T Bank
Assignments Department
PO BOX 1596
Buffalo, NY 14240

Property Address: **6716 CORNELIUS ST, PHILADELPHIA, PA 19138**

---

## ASSIGNMENT OF MORTGAGE

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR AMERIHOME MORTGAGE COMPANY, LLC., ITS SUCCESSORS AND ASSIGNS , P.O. BOX 2026, FLINT, MI 48501 1-888-679-6377,** by these presents does convey, assign, and transfer and set over to: **M&T BANK, ONE FOUNTAIN PLAZA 8TH FLOOR, BUFFALO, NY 14203,** the following described Mortgage, with all interest, all liens, and any rights due or to become due thereon. Said Mortgage for **$161368.00** is recorded in the State of **PENNSYLVANIA,** County of **Philadelphia** Official Records, dated **04/23/2021** and recorded on **06/10/2021,** as Instrument No. **53844676** in Book No. **N/A,** at Page No. **N/A**

Original Mortgagor: **KIMYUTTA M. CARROLL**

Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR AMERIHOME MORTGAGE COMPANY, LLC., ITS SUCCESSORS AND ASSIGNS**

Municipality: **City of PHILADELPHIA**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC is at 11819 Miami St., Suite 100, Omaha, NE 68164 P.O. BOX 2026, FLINT, MI 48501-2026

Legal Description: **ALL THAT CERTAIN LOT OR PIECE OF GROUND WITH THE BUILDINGS AND IMPROVEMENTS THEREON ERECTED. SITUATED ON THE SOUTHWESTERLY SIDE OF CORNELIUS STREET AT THE DISTANCE OF ONE HUNDRED THIRTY-ONE FEET, FOUR INCHES NORTHWESTWARDLY FROM THE NORTHWESTERLY SIDE OF WALNUT LANE (SIXTY FEET WIDE) IN THE 10TH WARD OF THE CITY OF PHILADELPHIA. CONTAINING IN FRONT OR BREADTH ON THE SAID SIDE OF CORNELIUS STREET SIXTEEN FEET FOUR INCHES AND EXTENDING OF THAT WIDTH IN LENGTH OR DEPTH SOUTHWESTWARDLY BETWEEN PARALLEL LINES AT RIGHT ANGLES TO THE SAW CORNELIUS STREET EIGHTY FEET TO A CERTAIN FIFTEEEN FEET WIDE DRIVEWAY EXTENDING FROM WALNUT LANE TO HERMAN STREET, NOW KNOWN AS BEYERLY ROAD.**

Date: **08/29/2023.**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR AMERIHOME MORTGAGE COMPANY, LLC., ITS SUCCESSORS AND ASSIGNS**

By: Tammy M. Hamilton

Name: **Tammy M. Hamilton**
Title: **Vice President**

STATE OF **New York** } s.s.
COUNTY OF **ERIE**

On **08/29/2023,** before me, **Jillian Keitz,** Notary Public, personally appeared **Tammy M. Hamilton, Vice President** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR AMERIHOME MORTGAGE COMPANY, LLC., ITS SUCCESSORS AND ASSIGNS** , personally known to me (or proved to me the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she/he/they executed the same in her/his/their authorized capacity(ies), and that by her/his/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Notary Public: **Jillian Keitz**
My Commission Expires: **03/04/2027**

JILLIAN KEITZ
NOTARY PUBLIC STATE OF NEW YORK
ERIE COUNTY
LIC. #01KE6388266
COMM. EXP. 03/04/2027

CERTIFICATE OF RESIDENCE

The undersigned does hereby certify that the precise address of the Mortgagee is: **ONE FOUNTAIN PLAZA 8TH FLOOR, BUFFALO, NY 14203**

BY:

Tammy M. Hamilton